UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PAUL W. BEGLEY, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>MICHAEL ASTRUE, Commissioner )<br>of Social Security, )<br>)<br>Defendant ) | CAUSE NO. 3:10-CV-73 RM |

OPINION and ORDER

Paul Begley seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), and 1383(c)(3). In his application for benefits, Mr. Begley alleged total disability beginning October 19, 2006[1] due to chest pain, shortness of breath, coronary artery disease, and back pain. His application was denied initially, on reconsideration, and following an administrative hearing at which he was represented by counsel. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Mr. Begley testified at the hearing before the administrative law judge, along with Dr. Ashok Jilhewar, a medical expert, and vocational expert Thomas

---

[1] At the administrative hearing, Mr. Begley amended the onset date of his disability to March 10, 2007.

Dunleavy. The ALJ used the standard five-step sequential evaluation, *see* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), and concluded that Mr. Begley had severe impairments — a back disorder, heart problems, hypertension, obesity, and sleep apnea — but didn't have an impairment or a combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).

The ALJ found that Mr. Begley's testimony regarding the intensity, persistence, and limiting effects of his symptoms wasn't credible because the overall record didn't establish any significant abnormalities that would preclude Mr. Begley from performing a range of sedentary level work with postural restrictions. The ALJ found that Mr. Begley was still capable of performing his past relevant work as a retail sales manager and also that Mr. Begley's skilled work performed at the sedentary level was transferable to a significant number of jobs at the light exertional level, so he wasn't disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(g) and 416.920(g). The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Mr. Begley's request for review. <u>Jones v. Astrue</u>, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Mr. Begley challenges the ALJ's conclusion that he isn't disabled, arguing that the ALJ erred in assessing his credibility and his residual functional capacity, the ALJ's conclusion that he was able to perform light work and could perform his past work as a retail sales manager or other jobs existing in the economy wasn't

2

supported by substantial evidence and was premised on legal error. He asks the court to reverse the Commissioner's decision and remand his case pursuant to 42 U.S.C. § 405(g) for further proceedings.

## I. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the court must affirm the Commissioner's determination if it is supported by substantial evidence, Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). While the substantial evidence analysis prevents the court from reweighing the evidence, making independent findings of fact, deciding questions of credibility, or substituting its own judgment for that of the Commissioner, the court won't simply "rubber-stamp the Commissioner's decision without a critical review of the evidence." Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).

In reviewing the ALJ's conclusions, a court conducts "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the

validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

## II. DISCUSSION

To qualify for disability benefits, a claimant must be found "disabled" under the Social Security Act. 42 U.S.C. § 423(a)(1)(E). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Mr. Begley bears the burden of proof regarding his disabling conditions and must establish that he was disabled on or before his date last insured. Allord v. Astrue, 631 F.3d 411, 416 (7th Cir. 2011).

The ALJ's review of Mr. Begley's case was based on the standard five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(iv), which resulted in his findings that (1) Mr. Begley had engaged in substantial gainful activity since the alleged onset date of disability; (2) Mr. Begley's severe impairments include a back disorder, heart problems, hypertension, obesity, and sleep apnea; (3) Mr. Begley doesn't have an impairment or combination of impairments that meets or equals any impairment listed in the regulations; (4) Mr. Begley had the residual functional capacity to perform light work with postural limitations; and (5) considering Mr. Begley's age, education, work experience, and residual functional

capacity, jobs that he could perform exist in significant numbers in the national economy. The ALJ concluded that Mr. Begley wasn't disabled within the meaning of the Social Security Act and wasn't entitled to benefits. *See* <u>Briscoe ex rel. Taylor v. Barnhart</u>, 425 F.3d 345, 352 (7th Cir. 2005) (noting that the claimant bears the burden of proof at steps one through four; the burden shifts to the Commissioner at step five).

*(A) Previous Employment*

Mr. Begley first challenges the ALJ's conclusion that he could perform his previous job of retail sales manager. According to Mr. Begley, his position as a retail sales manager was an accommodated job that can't be considered as substantial gainful activity, so the ALJ erred in concluding that he could perform his past relevant work as a retail sales manager.

The SSA considers Mr. Begley's ninety-day employment as a retail sales manager to be an unsuccessful work attempt. *See* R. 162 (finding of SSA that Mr. Begley's "work done after 10/19/06 constitutes an unsuccessful work attempt as it was short in duration (less than 3 months) and ended as a result of his impairment."); S.S.R. 05-02 (stating that employment terminated within three months – after a thirty-day break in continual work activity – is not substantial gainful activity). But the ALJ's misstatement that Mr. Begley had engaged in work after the alleged onset of his disability didn't affect the ultimate conclusion: the ALJ continued through the five-step analysis and found Mr. Begley capable of

5

future work in other fields. R. 95; *cf.* Getch v. Astrue, 539 F.3d 473, 481 (7th Cir. 2008) ("Had the ALJ conducted a step-five analysis to determine whether Mr. Getch could perform other jobs in the national economy, the error [at step four] might be harmless. Nevertheless, he did not to do so here, and we cannot fill that gap."); Lauer v. Bowen, 818 F.2d 636, 638, 639 n.7 (7th Cir. 1987) (reversible error where ALJ incorrectly found claimant's unsuccessful work attempt to be past relevant substantial gainful activity and didn't consider whether claimant was capable of other employment).

Contrary to Mr. Begley's argument, the ALJ's consideration of his retail management experience for future gainful activity wasn't erroneous. Even if the ALJ had correctly found that the retail manager position was a non-qualifying work activity, a finding that Mr. Begley didn't engage in substantial gainful activity during a particular period doesn't resolve his ability to engage in future work activity. "To answer this question, it is necessary to consider all the medical and vocational evidence, of which the work performed after alleged onset of disability is only a part." S.S.R 83-33. The ALJ could find Mr. Begley capable of working in retail management if the evidence showed that he had the skills necessary for the job.

The ALJ took into account that Mr. Begley's "ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations," R. 94, and found that Mr. Begley had the ability to engage in future employment with an RFC of sedentary to light work with postural

6

limitations. R. 94–95. The ALJ then concluded that the totality of the record — including testimony from Mr. Begley and medical and vocational experts and Mr. Begley's age, education, work experience, and residual functional capacity — supported a finding of not disabled because Mr. Begley was capable of "making a successful adjustment to other work that exists in significant numbers in the national economy." R., at 95.

Because the ALJ conducted a proper five-step analysis of Mr. Begley's ability to perform future work in sales and other fields, the court concludes that the ALJ's statement that Mr. Begley could perform his past relevant work as a retail sales manager — which was an accommodated job and unsuccessful work attempt — doesn't require a remand of his case. The ALJ's erroneous statement about Mr. Begley's past work activity was harmless because it didn't factor into his step five analysis of other jobs Mr. Begley is capable of performing.

*(B) Credibility Determination and Vocational Hypothetical*

Mr. Begley next challenges the ALJ's conclusion that his testimony wasn't credible and complains that the ALJ's reasons for discounting his testimony were inadequate. According to Mr. Begley, had the ALJ credited his testimony about his back and neck pain and tiredness and fatigue brought on by his sleep apnea and included those complaints in the hypothetical presented to the vocational expert, the vocational expert would have concluded that jobs he could perform aren't

available in the national economy, rendering the ALJ's conclusion that he could perform a range of light and sedentary work "completely inadequate."

(1)

Courts review an ALJ's credibility determinations with deference because "an ALJ, not a reviewing court, is in the best position to evaluate credibility." Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009); *see also* Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010) (because an ALJ has the opportunity to observe the witnesses testifying, the ALJ's credibility determinations "are entitled to special deference"). The ALJ noted that he was to consider Mr. Begley's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and make his credibility determinations based on the entire record. R. 91. He reviewed the medical evidence, which included

- Mr. Begley's (i) January 2007 stress test where he reached the target heart rate of 75%; (ii) January 2007 nuclear medicine perfusion stress/rest analysis, which revealed no significant myocardial perfusion abnormality or evidence of ischemic changes; (iii) April 2007 orthopedic evaluation, which rated Mr. Begley's back pain as 10 on a scale of 0-10 and his leg and arm pain as 6 on the 0-10 scale; (iv) past medical history of coronary artery heart disease, angina, hypertension, and gout; (v) current medications of Toprol and Zetia; (vi) physician's report of no significant abnormalities, 5/5 motor strength, full flexion and extension of the neck, normal alignment of

8

the spine with a mild moderate degree of disc collapse, cervical disc disease at C-4-C-5, C5-C6, and C6-C7, and lumbar degenerative disc disease; (vii) admission to St. Joseph Medical Center in April 2007 for shortness of breath, fatigue, and regulation of hypertension medication; (viii) June 2007 cardiac catheterization with findings of normal coronaries and normal left ventricle wall motion; (ix) July 2007 magnetic resonance imaging test, which revealed disc desiccation and bulging for which the physician recommended physical therapy and steroid injections; and (x) testing in December 2007 for sleep apnea, which showed moderate to severe obstructive sleep apnea that was CPAP responsive and resulted in a recommended use of a CPAP mask. R. 91-92.

- Treating physician Dr. John Kobayashi's June 2008 report on Mr. Begley's cardiac work-up, which included two nuclear stress tests, an echocardiogram, and a cardiac catheterization, all of which were normal. Dr. Kobayashi concluded that Mr. Begley's chest pain was non-cardiac in etiology, and he recommended therapy for Mr. Begley's sleep apnea based on a finding that bouts of hypoxemia during the night could cause his chest pain. R. 93.
- Independent medical examiner Dr. Ashok Jilhewar's opinion evidence and testimony, which the ALJ found to be generally consistent with the residual functional capacity to work at the light level. R. 93.

- The opinion of the Disability Determination Services medical consultants who concluded that although Mr. Begley has impairments, he has the residual functional capacity to perform light exertional work. R. 93

The ALJ found that the overall record showed that Mr. Begley's impairments were "mild to moderate in nature." R. 93. Based on medical evidence, testimony at the hearing, and the complete record, the ALJ concluded that while the "determinable impairments could reasonably be expected to cause the alleged symptoms," Mr. Begley's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessed herein showing that the record failed to establish any significant abnormalities that would preclude the performance of a range of sedentary level work with postural restrictions." R. 92-93. The ALJ didn't ignore Mr. Begley's testimony, but, instead considered his testimony and concluded that Mr. Begley's statements about the limiting effects of his condition were inconsistent with the medical evidence.

While Mr. Begley complains that the ALJ's credibility determination was "inappropriate boilerplate language," his case is distinguishable from the Parker case upon which he relies. While the ALJs in the two cases used identical language, *see* Parker v. Astrue, 597 F.3d 920, 921-922 (7th Cir. 2010), the Parker claimant produced extensive evidence of his potent medications, prior surgeries, and treatment for objective, unidentifiable pain from dozens of doctors. The ALJ ignored the substantial amount of evidence Mr. Parker produced, which differs

10

from Mr. Begley's case, where the record is sparse and Mr. Begley didn't carry his burden of production relating to his symptoms and limitations. When a claimant isn't represented by counsel at the hearing, the ALJ has the duty to develop "a full and fair record," Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009), but when, as here, the claimant is represented by counsel, the ALJ "is entitled to assume that the applicant is making his strongest case for benefits." Glenn v. Secretary of Health and Human Servs., 814 F.2d 387, 391 (7th Cir. 1987).

(2)

Mr. Begley complains that the ALJ failed to incorporate his statements about his back and neck pain and chronic fatigue into the hypothetical posed to the vocational expert. But "an incomplete hypothetical question may be cured by a showing that prior to testifying the vocational expert reviewed the claimant's record containing the omitted information." Ragsdale v. Shalala, 53 F.3d 816, 820 (7th Cir. 1995). The record shows that the vocational expert was present during Mr. Begley's testimony, indicated that he had examined the vocational evidence before the hearing, and had an opportunity to question Mr. Begley at the heraing about his past work experience. Because the vocational expert was familiar with the record, the court may "draw the conclusion that the vocational expert considered [Mr. Begley's] various impairments even though all those impairments were not specifically included in the ALJ's hypothetical question." Ragsdale v. Shalala, 53 F.3d 816, 820 (7th Cir. 1995); *see also* O'Connor-Spinner v. Astrue, 627 F.3d 614, 619 (7th Cir. 2010) (noting that a court may assume "a VE's

familiarity with a claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations").

Too, a claimant who is not satisfied with an ALJ's hypothetical may further develop the record by "question[ing] the vocational expert on cross-examination, pos[ing] his own hypothetical questions, or request[ing] the ALJ to pose interrogatories to the vocational expert, in each case challenging the vocational expert to explain and expand upon the basis of his response to the ALJ's hypothetical question." Ragsdale v. Shalala, 53 F.3d 816, 819 (7th Cir. 1985); *see also* Donahue v. Barnhart, 279 F.3d 441, 446-447 (7th Cir. 2002) (counsel has the responsibility for raising issues if the ALJ does not). Mr. Begley's counsel didn't raise any issues about the hypothetical when afforded the opportunity to cross-examine the vocational expert at the hearing. R. 73. The ALJ specifically inquired of Mr. Begley's counsel, "[D]o you have any questions or hypotheticals?" R. 73. Counsel noted in response that the hypothetical didn't include the testimony of Mr. Begley, but stated that he didn't "have any comments on that particular hypothetical, no." R. 73. Because Mr. Begley had the opportunity to raise issues about the hypothetical, but didn't do so, the ALJ's proffered hypothetical was not erroneous. *See* Prange v. Astrue, 547 F. Supp. 2d 926, 938 (S.D. Ind. 2008) ("[E]ven if the ALJ did fail to ask the VE an appropriate question about Prange's ability to perform jobs in the national economy given his impairments, it is Prange's burden to protect his own interests by properly cross-examining the VE

about his opinions."); Juarez v. Astrue, No. 09-C-4021, 2010 WL 1580200, at *12 (N.D. Ill. Apr. 19, 2010) ("[P]laintiff's attorney, in fact, cross-examined the VE, but did not raise any questions or objections regarding the ALJ's assumptions about plaintiff's physical limitations. Plaintiff, therefore, has waived any argument that the hypothetical provided was inappropriate.").

*(C) Obesity, Medications, and Daily Activities*

Mr. Begley complains that the ALJ didn't consider the impact of his obesity or medications in combination with his other impairments on "his ability to function on a sustained basis" and didn't discuss his daily activities in the report.

(1)

Dr. Jilhewar testified at the hearing that Mr. Begley was obese but not morbidly obese, R. 50, and the ALJ concluded in his report that Mr. Begley's obesity "does not meet or medically equal any of the special/other impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526). *See* Prochaska v. Barnhart, 454 F. 3d 731, 736-738 (7th Cir. 2006) (failure to discuss obesity was harmless error where ALJ relied on the record that addressed it). Although the ALJ didn't specifically address Mr. Begley's obesity in his assessment, the incorporation of postural limitations into the RFC findings shows that the ALJ considered Mr. Begley's obesity in his findings. *See* Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (finding failure to discuss obesity harmless because it was indirectly factored-in through work limitations). While

13

Mr. Begley now notes that SSR 02-1p states that "obesity can cause limitation of function" and says that his obesity "can affect his sleep apnea," he doesn't point to anything in the record — *e.g.*, medical evidence and/or testimony about the negative impact of his obesity on his daily activities — that would support a finding by the ALJ that Mr. Begley's obesity restricted his functioning on a sustained basis. *See* Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (a claimant must articulate how obesity limits his functioning and exacerbates his impairments).

(2)

Mr. Begley says the ALJ didn't discuss that fact that some of his medications may cause fatigue. The record shows that Mr. Begley testified that he took over-the-counter medication (Aleve, ibuprofen, Motrin) for his lower back pain, which he said helped the pain somewhat, R. 35-36; he took nitroglycerin for chest pain "every week," which he said usually subdued the pain, R. 38-39; and he noted a problem regulating his blood pressure in response to questions by Dr. Jilhewar. R. 43. Mr. Begley's other medications were entered into the record, R. 240, and the ALJ noted them in his findings. R. 92. While Mr. Begley complains that the ALJ didn't consider the impact of his medications, Mr. Begley offered no testimony at the hearing about any side effects he was suffering or about how his medications adversely affected him in his daily life. Mr. Begley argues now that two of his medications "may be causing fatigue," but he didn't discuss or establish any adverse or detrimental side-effects at his hearing, so the ALJ didn't err in his

14

credibility determination on this issue. An ALJ can presume that the claimant's counsel presented the claimant's best case, *see* Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007) ("a claimant represented by counsel is presumed to have made his best case before the ALJ"), and this record is devoid of any evidence regarding deleterious effects from any medications, making the ALJ's credibility determination supported by substantial evidence.

(3)

Although the ALJ didn't clearly articulate the consistency or inconsistency of Mr. Begley's daily activities against his alleged pain and RFC level, Mr. Begley's testimony about his daily activities supports the ALJ's credibility determination. Mr. Begley said that his daily activities consist of using a sit-down shower because he can't get in and out of the bathtub, R. 29, sitting in the yard with a cup of coffee, watching the news, and shuffling around the house. R. 30. Mr. Begley related that on a good day, he enjoys getting out of the house and driving eight or nine miles to Starbucks (in Valparaiso, Indiana) for coffee and then to Barnes & Noble for a newspaper and interaction with the people. R. 30. Upon his arrival home from Valparaiso, he takes a nap and then sits in the kitchen and talks to his wife and sometimes starts the laundry. R. 33. His evenings consist of sitting and watching television or sitting outside watching his wife walk the dog. Id. Mr. Begley reported that he has back and neck pain daily, chest pains weekly, and needs a nap every afternoon.

The ALJ stated that he considered all Mr. Begley's symptoms and the extent to which those symptoms reasonably could be accepted as consistent with the objective medical evidence, R. 91, and concluded that Mr. Begley's statements about "the intensity, persistence and limiting effects of these symptoms" weren't supported by any medical findings of significant abnormalities. Mr. Begley now claims that the daily activities he described at the hearing "are consistent with his claim that he is unable to sustain competitive work at even the sedentary level," but the ALJ, who was in the best position to assess Mr. Begley's testimony in conjunction with the other evidence in the record, disagreed. The court can't say that ALJ's conclusion in this regard was "patently wrong." Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (this court will not overturn an ALJ's credibility determination unless it is 'patently wrong'").

Mr. Begley's work during the past fifteen years has been of a skilled sedentary level. R. 70–71. The ALJ's credibility determination and RFC findings were consistent with Mr. Begley's testimony about his ability to get around, sit, and move about freely throughout the day. R. 91, 93. The ALJ's credibility determination was not in error because Mr. Begley's daily activities are consistent with the ALJ's findings. *See* R. 92–93 (finding that claimant's medical impairments could be expected to cause his alleged symptoms, but concluding that such impairments don't preclude him from working). Because Mr. Begley didn't carry his burden of production to show sufficient hardship in his daily activities, or any deleterious effects from his obesity or medications, the ALJ's credibility

16

determination under S.S.R. 96-7p was not erroneous, but, instead, was supported by substantial evidence. *See* Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001) (stating the ALJ need not discuss every piece of evidence in the record); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994) ("The ALJ must articulate his reasons for accepting or rejecting entire lines of evidence, but we do not require a written evaluation of each piece of evidence.").

### *(D) Residual Functioning Capacity*

Mr. Begley lastly claims the ALJ erred in assessing his residual functioning capacity ("RFC"). Assessment of a person's RFC requires consideration of the person's impairments, including the ability to meet the physical, mental, sensory, and other requirements of work, and the relevant evidence in the record. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). A claimant's RFC is the most the claimant "can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). According to Mr. Begley, the ALJ determined that his RFC was for sedentary work and then wrongly found that he could perform jobs at the light work level.

The court can't agree with Mr. Begley's conclusion that the ALJ found his RFC level to be limited to sedentary work. A review of the ALJ's report confirms that he found Mr. Begley to have the residual functional capacity to perform light work with postural limitations due to his impairments. *Compare* R. 93 (stating that nothing in the record established abnormalities that would preclude Mr.

Begley from performing sedentary work with postural restrictions), *with* R. 91 (finding Mr. Begley to have the RFC to perform light work with postural limitations) *and* R. 94 (noting that Mr. Begley's ability to perform a full range of light work was impeded by additional limitations). The ALJ found that the evidence didn't support a finding of disability because Mr. Begley wasn't incapable of base-level sedentary work. R. 92–93 (claimant's symptoms don't preclude him from sedentary level work with postural restrictions). The ALJ's reference to Mr. Begley's ability to do sedentary work was his starting point for determining Mr. Begley's RFC, not the limit for Mr. Begley's abilities. Based on the medical record and testimony by the vocational expert and Mr. Begley, substantial evidence supported the ALJ's RFC finding of light work with postural limitations.

Mr. Begley further argues that the jobs proposed by the vocational expert are inconsistent with the RFC finding. The vocational expert's conclusion was that Mr. Begley could perform jobs from the sedentary level and light work level. Because the jobs proposed by the vocational expert included consideration of Mr. Begley's postural restrictions and were within or below the light skill level found to be applicable to Mr. Begley, the vocational expert's testimony wasn't inconsistent with the RFC finding and the ALJ didn't err in relying on that testimony to find that Mr. Begley could perform a significant number of jobs from sedentary up to the light work level.

The ALJ specifically found that Mr. Begley had the residual functional capacity to perform light work with postural limitations due to his impairments.

18

R. 91, 94. Mr. Begley incorrectly says the ALJ found his RFC level to be sedentary. *Compare* R. 93 (maintaining that the record failed to establish that claimant incapable of *sedentary work with postural restrictions*), *with* R. 91 (finding claimant's RFC to be light work with postural limitations), *and* R. 94 (stating claimant's ability to perform at the "light work" RFC impeded by additional limitations). Mr. Begley misinterprets the ALJ's statement in the record. *See* R. 92–93. The ALJ simply noted that the evidence didn't prove a disability because the record didn't prove Mr. Begley to be incapable of base-level sedentary work. R. 92–93 (claimant's symptoms don't preclude him from sedentary level work with postural restrictions). This is akin to setting a bottom to Mr. Begley's RFC, not limiting him to a sedentary level of work. Based upon the medical record, testimony by the vocational expert and Mr. Begley himself, the ALJ's RFC finding of light work with postural limitations was supported by substantial evidence and wasn't inherently inconsistent.

## III. Conclusion

Although the ALJ's explanation could have been more articulate, he accurately and logically bridged the connection between the evidence and the denial of benefits based upon substantial evidence given the sparse record and claimant's inability to produce evidence and testimony. Any errors that might have occurred were harmless and, based on the record, remand is unnecessary because it wouldn't change the outcome of the case.

Based on the foregoing, the court DECLINES Mr. Begley's request to remand this action for further findings and AFFIRMS the ALJ's denial of benefits.

SO ORDERED.

ENTERED:  March 16, 2011 

                                 /s/ Robert L. Miller, Jr. 
                              Judge, United States District Court